Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/27/2022 08:07 AM CDT

Margaret L. Garrison, appellee,
v. Logan M. Otto II, appellant.

___ N.W.2d ___

Filed March 4, 2022.    Nos. S-21-478, S-21-641.

1. **Protection Orders: Appeal and Error.** The grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Protection Orders.** Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed.

3. \_\_\_\_. Absent abuse as defined by Neb. Rev. Stat. § 42-903 (Cum. Supp. 2020), a protection order may not remain in effect.

4. \_\_\_\_. The goal of domestic abuse protection orders is to protect victims of domestic abuse from further harm.

5. \_\_\_\_. In considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper, but may also consider a number of factors pertinent to the likelihood of future harm.

6. \_\_\_\_. Factors in considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred might include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships.

7. **Protection Orders: Statutes: Affidavits: Time.** The statutory scheme does not impose any limitation on the time during which a victim of

domestic abuse may file a petition and affidavit seeking a protection order subsequent to the abuse.

8. **Protection Orders.** The renewal of a protection order shares the same fundamental characteristics of the original protection order.

9. \_\_\_\_. The requisite past act of domestic abuse is necessarily found in relation to the underlying protection order and is not to be relitigated simply because the petitioner seeks a renewal of the order.

10. **Actions: Appeal and Error.** Principles of law of the case generally bar reconsideration of the same or similar issues at successive stages of the same suit or prosecution.

11. **Protection Orders.** A protection order upon renewal, just as at its inception, is oriented toward the future with the goal to protect victims of domestic abuse from further harm.

12. \_\_\_\_. The court at a hearing on a petition for renewal must reevaluate the likelihood of harm over the course of another year in which it would be in effect if the petition for renewal is granted.

13. \_\_\_\_. In determining if a contested renewal of the protection order is justified in light of the likelihood of future harm, the court considers factors similar to those applicable to the initial contested protection order.

14. \_\_\_\_. In determining if a contested renewal of the protection order is justified in light of the likelihood of future harm, the court considers all the surrounding circumstances, including the passage of time since the abuse that was found in relation to the original order and all the factors relating to its severity, nature, frequency, and impact.

15. \_\_\_\_. The court may consider, in determining whether to renew a protection order, whether any new domestic abuse has occurred during the period of the original protection order and its severity, nature, frequency, and impact.

16. \_\_\_\_. In determining the likelihood of future harm based on past domestic abuse, as well as on any abuse during the duration of the original protection order, the court may consider evidence of the relationship of the parties as demonstrated by their behavior both before and since the issuance of the original protection order and by their testimony at the hearing.

Appeals from the District Court for Lancaster County: RYAN S. POST, Judge. Appeal in No. S-21-478 dismissed. Judgment in No. S-21-641 affirmed.

Edith T. Peebles, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellant.

John W. Ballew, Jr., of Ballew Hazen, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

The respondent appeals the renewal of a domestic abuse protection order. He argues the evidence in this case was insufficient to support the court's finding that renewal of the protection order was necessary to prevent future harm, when there was no further abuse or violation of the protection order. We affirm.

## II. BACKGROUND

This case involves the renewal, under Neb. Rev. Stat. § 42-924(3)(b) (Cum. Supp. 2020), of a domestic abuse protection order issued on March 18, 2020. The order was against Logan M. Otto II. The protected party was his former spouse, Margaret L. Garrison.

### 1. Underlying Order

The underlying domestic abuse protection order in this case was originally issued ex parte, upon a finding that Garrison had stated facts showing Otto attempted to cause, or intentionally, knowingly, or recklessly caused, bodily injury to Garrison; or that he had, by means of credible threat, placed Garrison in fear of bodily injury. Further, the court found it reasonably appeared from the specific facts included in the affidavit that Garrison would be in immediate danger of abuse before the matter could be heard on notice.

The petition and affidavit had described as the most recent and severe incident of abuse Otto's actions occurring on February 26, 2020, in a parking lot after a court hearing involving a dispute between Garrison and Otto. Garrison averred that Otto was exiting the lot in his vehicle, when he sped up and

swerved toward Garrison, who was walking with her husband to her car. Garrison described that she was almost hit, but that her husband grabbed her arm to remove her from the vehicle's path. Attached photographs showed skid marks in the lot. The petition and affidavit also described, over the course of the preceding 7 years, other acts of violence, prior assault charges against Otto, and other protection orders against Otto.

Otto contested the ex parte order, and a hearing was held in which Otto claimed, among other things, that he did not know Garrison and her husband were in the lot on February 26, 2020. Otto testified he had been driving slowly while on his cell phone and swerved away when he noticed two pedestrians, who ended up being Garrison and her husband. Otto also testified that the tire tracks in the photograph did not resemble tracks his tires could make.

The district court found from the credible evidence adduced that the March 18, 2020, order should be affirmed.

Otto appealed the district court's decision affirming the March 18, 2020, ex parte domestic abuse protection order, arguing there was insufficient evidence of abuse or likelihood of future harm. In a two-paragraph opinion, we affirmed the district court's decision.[1]

## 2. Renewal

### (a) Petition

On March 17, 2021, Garrison filed a petition and affidavit to renew the domestic abuse and protection order. Garrison averred that she and Otto have had ongoing proceedings in district court since 2009, stemming from their divorce. She generally asserted there was a long history of abuse by Otto of herself, their children, and her husband, as well as a violation by Otto of another harassment protection order in the past. Garrison averred that she feared for the safety of everyone in her household.

---

[1] *Garrison v. Otto*, 308 Neb. 372, 953 N.W.2d 568 (2021).

### (b) Ex Parte Order

The court issued an ex parte renewal of the ex parte domestic protection order, effective for 1 year from March 19, 2021. In so ordering, the court found that Garrison had stated facts showing Otto had attempted to cause, or intentionally, knowingly, or recklessly had caused, bodily injury to Garrison and by means of credible threat had placed her in fear of bodily injury. Further, the court found it reasonably appeared from the specific facts included in the affidavit that Garrison would be in immediate danger of abuse before the matter could be heard on notice.

### (c) Hearing

Otto contested the ex parte renewal and requested a hearing. At the hearing, Garrison again gave her version of the incident in the parking lot, which occurred directly after a court hearing in which the court ruled Otto would not have his parenting time "renewed." Garrison testified that she still felt her life was in danger from Otto.

Otto also testified at the hearing. He again denied trying to hit or scare Garrison with his vehicle. He presented pictures of the tires on the vehicle he was driving and asserted that the tracks in the photograph that had been submitted were not from his vehicle. He acknowledged he had presented this same evidence at the hearing on the original protection order.

Otto also generally testified that he had a positive relationship with his children and has historically tried to avoid interacting with Garrison. Otto testified that he has had 551 days of parenting time suspended since October 2019, with the exception of his parenting time with his then 14-year-old son. During that time of suspended parenting time, he has had only limited visitation in public places with his other children, during which the youngest child misbehaved. Otto testified that his children's behavior has deteriorated while his parenting time has been suspended.

Otto's wife testified that Otto is very careful to avoid having any contact with Garrison at public sporting events the children participate in, which both they and Garrison attend.

### (d) May 10, 2021, Order

In an order on May 10, 2021, the court affirmed the ex parte renewal of the domestic abuse protection order and ordered it remain in effect.

The court concluded that a violation of the initial order was not a prerequisite for a renewal, noting that no such requirement is found in the statutes and that it would undermine the goal of domestic abuse protection orders to protect victims of domestic abuse from further harm.

The court also concluded that although the remoteness of the past abuse is a matter for the court to consider, the occurrence of additional acts of abuse since the original protection order is not a legal prerequisite for its renewal.

Finally, the court concluded that the petitioner for a renewal of a domestic abuse protection order is not required at the hearing on renewal to reestablish the truth of all facts supporting the issuance of the initial order. Noting principles of the law-of-the-case doctrine, the court stated that a hearing on renewal "is not an opportunity to relitigate the initial protection order." The petitioner must only establish, by a preponderance of the evidence, the truth of the facts supporting renewal. Once that burden is met, explained the court, the burden shifts to the respondent to show why the protection order should not be renewed.

The court took notice of the fact that it had already been determined that Garrison was a victim of domestic abuse under Neb. Rev. Stat. § 42-903(1) (Cum. Supp. 2020). The court found that Garrison had established by a preponderance of the evidence the truth of the facts supporting renewal and that Otto did not show cause as to why the protection order should not be renewed.

More specifically, the court noted that the affidavit and Garrison's testimony at the hearing provided the reasons she

sought renewal, additional events since the initial protection order was issued, that there have been no material changes in relevant circumstances, she remains fearful of Otto and feels her life is still in danger, and she was not requesting a modification of the prior order. The court found Garrison's testimony at the hearing was credible and showed she has a present fear of future harm due to the history and pattern of such abuse to date.

The court noted that Otto testified to numerous confrontations between Garrison and Otto over the last few years, but "despite the past conduct leading up to his testimony, future harm is unlikely and Garrison is trying to alienate him from his children." The court generally observed that both parties took "detours" in their testimony into grievances from many years before and "squabbled" over matters pending before the court in other proceedings. The court stated that these detours showed that "the relevant circumstances since entry of the initial protection order certainly have not improved." The court stated that it had considered the factors pertinent to the likelihood of future harm and that Otto had not met his burden of proof as to why the protection order should not remain in effect.

The court summarized that Garrison had established by a preponderance of the evidence that she was a victim of domestic abuse as defined by § 42-903, that there has been no material change in relevant circumstances since entry of the initial protection order, that Garrison remains in fear for her safety now and in the future, and that renewal of the protection order is needed to prevent future harm.

### (e) Terminating Motion and Notices of Appeal

On May 20, 2021, Otto filed a motion for a new trial or to alter or amend. Before the court ruled on the motion, however, Otto filed a notice of appeal on June 9, 2021. That appeal was docketed as case No. A-21-478.

The district court found that despite Otto's notice of appeal, pursuant to Neb. Rev. Stat. § 25-1912(3) (Cum. Supp. 2020), it had jurisdiction to rule on the motion for new trial or to alter or amend. The court then denied the motion for new trial or to alter or amend.

Otto filed another notice of appeal on August 4, 2021, docketed as case No. A-21-641. The Court of Appeals consolidated the two appeals, and we moved them to our docket.

### III. ASSIGNMENT OF ERROR

Otto assigns that the trial court erred in affirming the ex parte renewal of the domestic abuse protection order.

### IV. STANDARD OF REVIEW

[1] A protection order pursuant to § 42-924 is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[2]

### V. JURISDICTION

As a threshold jurisdictional matter, we briefly address which of these two consolidated appeals, derived from two separate notices of appeal but purporting to appeal from the same underlying order of renewal of the protection order, is properly before us.

Section 25-1912(3) provides in relevant part that the running of the time for filing a notice of appeal shall be terminated as to all parties by a timely motion for a new trial or motion to alter or amend a judgment. It provides further, "When any

---

[2] *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019).

motion terminating the time for filing a notice of appeal is timely filed by any party, a notice of appeal filed before the court announces its decision upon the terminating motion shall have no effect, whether filed before or after the timely filing of the terminating motion."[3] Instead, "A new notice of appeal shall be filed within the prescribed time after the entry of the order ruling on the motion."[4]

The first notice of appeal, resulting in what is presently docketed as case No. S-21-478, was premature. It was filed after the terminating motion for new trial or to alter or amend and before the court announced its decision on that motion. Pursuant to § 25-1912(3), it had no effect. As such, case No. S-21-478 is dismissed for lack of jurisdiction.

The notice of appeal resulting in what is presently docketed as S-21-641 was timely filed. Our opinion herein addresses the merits of that appeal.

## VI. ANALYSIS

Otto's argument on appeal is that the evidence was insufficient to support the district court's determination that renewal of the protection order was justified by the likelihood of future harm. Both the underlying protection order and its renewal were issued as ex parte orders that were affirmed after show cause hearings in which both parties had the opportunity to present evidence and make arguments. Otto does not attack the renewal order on procedural grounds, and we express no opinion on the procedure followed here. In arguing that the court should not have renewed the protection order, Otto claims the incident on February 26, 2020, was a simple case of distracted driving. He also points out that he did not violate the protection order or commit any acts of abuse since the protection order was issued. This is our first occasion to address what findings are necessary to support the renewal of a domestic abuse protection order.

---

[3] § 25-1912(3).

[4] *Id.*

Under the Protection from Domestic Abuse Act,[5] "[a]ny victim of domestic abuse" may seek a domestic abuse protection order.[6] Subsection (1)(b) of § 42-924 provides that the "petition for a protection order shall state the events and dates or approximate dates of acts constituting the alleged domestic abuse, including the most recent and most severe incident or incidents."

[2,3] In the context of a court's deciding whether to affirm or rescind the initial ex parte protection order, we have held that whether domestic abuse occurred is a threshold issue, and absent abuse as defined by § 42-903, a protection order may not remain in effect.[7] "Abuse" is statutorily defined as the occurrence of one or more of the following acts between family or household members: (1) attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;[8] (2) placing, by means of credible threat, another person in fear of bodily injury,[9] or (3) engaging in sexual contact or sexual penetration without consent as defined in Neb. Rev. Stat. § 28-318 (Cum. Supp. 2020).[10] Family or household members includes former spouses.[11]

[4] We have also held, in the context of a court's decision to affirm or rescind an initial ex parte protection order, that a finding that domestic abuse has occurred does not end a court's inquiry.[12] In *Maria A. on behalf of Leslie G. v. Oscar G.*,[13]

[5] Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2020).

[6] § 42-924.

[7] See *Robert M. on behalf of Bella O. v. Danielle O., supra* note 2. See, also, § 42-924.

[8] § 42-903(1)(a).

[9] § 42-903(1)(b).

[10] § 42-903(1)(c).

[11] § 42-903(3).

[12] See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

[13] See *id.*

we explained that the goal of domestic abuse protection orders is to protect victims of domestic abuse from further harm. Thus, the court must conduct a wider inquiry that weighs the likelihood of future harm to the petitioner in light of all the surrounding circumstances.[14] We noted that we have repeatedly analogized domestic abuse protection orders to injunctions, which sound in equity.[15] And injunctions are not meant to punish past actions but to prevent future mischief.[16] On a consideration of all the circumstances of each case, the court, before issuing an injunction, weighs the burdens the order will inflict against its benefits.[17]

[5-7] We accordingly held that in considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper, but may also consider a number of factors pertinent to the likelihood of future harm.[18] Those factors might include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships.[19] With respect to the factor of remoteness, we have observed that the statutory scheme does not impose any limitation on the time during which a victim of domestic abuse may file a petition and affidavit seeking a protection order after the abuse.[20]

---

[14] See *id.*

[15] See *id.*

[16] *Id.*

[17] See *id.*

[18] *Id.*

[19] *Id.*

[20] See *id.* See, also, *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015).

Under § 42-924(3), the protection order is generally effective for a period of 1 year, "unless dismissed or modified by the court prior to such date."[21] But, under § 42-924(3)(b), any victim of domestic abuse may, within 45 days before expiration, file a petition and affidavit to renew a protection order. Section 42-924(3)(b)(ii) indicates that the petition for renewal shall state that "there has been no material change in relevant circumstances since entry of the order" and set forth "the reason for the requested renewal." The renewed protection order is effective for 1 year.[22]

[8] Thus, as opposed to the underlying petition and affidavit for the underlying order, in which petitioner "shall state the events and dates or approximate dates of acts constituting the alleged domestic abuse,"[23] the petition and affidavit for renewal must state "there has been no material change in relevant circumstances since entry of the order" and "the reason for the requested renewal."[24] The Protection from Domestic Abuse Act does not otherwise elaborate on what the district court must find in order to renew the protection order. However, the renewed protection order necessarily shares the same fundamental characteristics of the original protection order. The renewed protection order must, therefore, be supported by the same statutory and equitable considerations as an original order.

[9,10] As "no material change in relevant circumstances" suggests, the requisite past act of domestic abuse is necessarily found in relation to the underlying protection order and is not to be relitigated simply because the petitioner seeks a renewal of the order. Principles of law of the case generally bar reconsideration of the same or similar issues at successive

---

[21] § 42-925(5).

[22] § 42-924(3)(iii).

[23] § 42-924(1)(b).

[24] § 42-924(3)(b)(ii).

stages of the same suit or prosecution.[25] There is nothing in the statutory scheme suggesting that a new act of abuse is a prerequisite for renewal of a domestic abuse protection order or that a petition for renewal gives the respondent an opportunity to relitigate the prior finding of abuse that was foundational to the underlying protection order.

On the other hand, the statutory scheme can be read to suggest that an evidentiary hearing on the petition for renewal should be held unless the respondent fails to appear or indicates he or she does not contest the renewal. Section 42-924(3)(b) states that the protection order "may be renewed on the basis of the petitioner's affidavit" when the petitioner seeks no modification of the order and either (1) the respondent has been properly served with notice of the petition for renewal and notice of hearing and fails to appear at the hearing or (2) the respondent indicates that he or she does not contest the renewal. The statute is silent as to the standard governing renewal if an evidentiary hearing is held.[26]

[11,12] The purpose of that hearing is to receive evidence so that the court may reweigh the burdens the order will inflict against its benefits in light of all the relevant circumstances, including what has or has not changed since its issuance. A protection order upon renewal, just as at its inception, is oriented toward the future with the goal to protect victims of domestic abuse from further harm.[27] Here, the district court applied the standard from *Maria A. on behalf of Leslie G.* and reevaluated the likelihood of harm over the course of another year in which it would be in effect if the petition for renewal is granted.[28] Because the question of the likelihood of future harm and the relative equities of the case pertain to a different

---

[25] See *Tierney v. Tierney*, 309 Neb. 310, 959 N.W.2d 556 (2021).

[26] See § 42-924.

[27] See *Maria A. on behalf of Leslie G. v. Oscar G., supra* note 12.

[28] See *id.*

effective period of time, the court's prior determinations of these matters were not law of the case.

[13-16] In determining if a contested renewal of the protection order was justified in light of the likelihood of future harm, the court here considered factors similar to those applicable to the initial contested protection order. Relevant factors included, but were not limited to, the passage of time since the abuse that was found in relation to the original order and all the factors relating to the severity, nature, frequency, and impact of abuse. The court also considered any violations of the protection order and any new domestic abuse occurring during the period of the original protection order and the severity, nature, frequency, and impact of any violation of the protection order or additional abuse. Further, in determining the likelihood of future harm, the court considered evidence of the relationship of the parties as demonstrated by their behavior both before and since the issuance of the protection order and by their testimony at the hearing.

Specifically, the district court correctly recognized as law of the case the abuse that supported the original protection order. In Otto's prior appeal to this court from the initial order, he principally contested the court's finding of abuse by claiming that on February 26, 2020, he had simply been driving slowly while distracted on his cell phone and with no intention of either hurting or scaring anyone. When we affirmed the lower court's order, we implicitly rejected this argument. We will not revisit it here. The original incident on February 26 was serious and could have resulted in Garrison's injury or death. That fact was properly weighed by the district court in considering Garrison's petition for renewal.

The court also properly considered the evidence of ongoing legal proceedings between Garrison and Otto stemming from their divorce, which were similar to the legal proceeding that spurred Otto's vehicular attack. The district court, after the hearing on renewal, found that the continuing conflict between the parties had not improved during the effective period of

the original protection order. The court observed that Otto himself testified as to numerous confrontations and accused Garrison of trying to alienate him from his children, yet at the same time asserted future harm to be unlikely. The court did not find this reasoning to be sound. The court instead found credible Garrison's averments and testimony that she still feared for her safety and the safety of everyone in her household. It found that renewal of the protection order for another year was necessary to prevent future harm.

The court did not err in ultimately determining that renewal was justified. We observe that the cases from other jurisdictions Otto relies on in asserting the evidence was insufficient to support the 1-year renewal involve facts that are very different from the case at bar. In *Vance v. Iowa Dist. Court for Floyd County*,[29] the court reversed a 5-year extension of a civil no-contact order after noting the order did not involve domestic abuse, sexual harassment, or any violence, threat of violence, or the physical safety of any family member, and there was no evidence the respondent had failed to comply with it. In *S.H. v. D.W.*,[30] the court held that a 2-year extension of a 2-year protective order against the former husband was unwarranted when it had originally been based on a singular uncontested act of assault occurring when the petitioner collected her belongings from the marital home while divorce proceedings were pending and the parties had since gone their separate ways.

In contrast, the underlying abuse here was serious, it occurred relatively recently, the parties continue to experience serious conflict, and the renewal period is for only 1 year. Although our review of domestic abuse protection orders is de novo, we give deference to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the

---

[29] *Vance v. Iowa Dist. Court for Floyd County*, 907 N.W.2d 473 (Iowa 2018).

[30] *S.H. v. D.W.*, 139 N.E.3d 214 (Ind. 2020).

facts rather than another.[31] Giving deference to the fact that the district court heard and observed the witnesses and accepted one version of the facts rather than another, we find it did not err in determining that the likelihood of future harm justified a 1-year renewal of the domestic abuse protection order.

## VI. CONCLUSION

Based on the foregoing reasons, we affirm the order of the district court in case No. S-21-641.

APPEAL IN NO. S-21-478 DISMISSED.
JUDGMENT IN NO. S-21-641 AFFIRMED.

---

[31] See *Maria A. on behalf of Leslie G. v. Oscar G., supra* note 12.