IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

YOUNG V. MILLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMA R. YOUNG, APPELLEE,

V.

COREY R. MILLER, APPELLANT.

Filed March 14, 2023.    No. A-22-767.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Corey R. Miller, pro se.

No brief for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Corey R. Miller appeals the renewal of a domestic abuse protection order against him. He argues the renewal was based on insufficient evidence. Based on our de novo review, we find the district court did not err in renewing the domestic abuse protection order; therefore, we affirm.

## BACKGROUND

Jama R. Young filed a petition and affidavit to renew a domestic abuse protection order against Miller. In it, she alleged that in the previous month, Miller had called her from the county jail, and then had a cousin contact her to state the phone call was an accident and that Miller did not mean to call. Young alleged that a text message from Miller's cousin stated that the cousin was asked to contact her. An ex parte domestic abuse protection order was entered. Though not in our record, Miller requested a hearing.

- 1 -

At a hearing on the matter, Young's petition and affidavit seeking renewal was entered into evidence. She stated that a protection order had been in place for nearly 2 years, although our record does not contain the prior applications or orders. Young confirmed what she had stated in her affidavit regarding the phone call from jail. She also stated that while she understood that a phone call would not typically do harm, the message from Miller caused her duress due to the history they shared which consisted of emotional, financial, and at times physical abuse. Young also stated her belief that an accidental phone call from jail was not very likely. She testified that in the past Miller had berated her with hurtful comments and threatened her life; she detailed past instances of physical abuse, including strangulation. Young stated that the relationship had isolated her and led to a fear that she still lived with, and that Miller had proven he would not stop with the harassment. She described a time when, prior to his plea and sentencing hearing for a crime not identified in our record, Miller contacted her father-in-law and tried to defame her character. Young acknowledged that Miller was in jail and that this limited much of what he could do, but stated she worried that if the protection order lapsed it would be opening a door that led to her future harm or potential death.

Miller testified that other than this instance, he had not contacted Young. He stated that he accidentally called Young, and that he had intended to call a friend with a phone number similar to Young's phone number. Miller stated the call was accepted and he was surprised when he heard Young's voice so he did not say anything and hung up immediately. Miller testified that he informed the correctional officer on duty, that he never called Young again, and that it was not his intention to call Young in the first place. Miller admitted that he told his cousin about the incident, but denied telling his cousin to contact Young and that his cousin did that on his own. He also explained that he was to be incarcerated until July 2024.

At the conclusion of the hearing, the district court found that the protection order previously issued should be renewed and ordered that it remain in effect for another year. Miller appeals.

ASSIGNMENTS OF ERROR

Miller assigns that he was denied due process and that the district court erred in granting a renewal petition for a domestic abuse protection order based on insufficient evidence.

STANDARD OF REVIEW

A protection order pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2020) is analogous to an injunction. *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

ANALYSIS

Miller assigns that he was denied due process and that the district court erred in renewing the domestic abuse protection order based on insufficient evidence. He fails to argue his due process claim; therefore, we will not address it. In order to be considered by an appellate court, an

alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Scalise v. Davis*, 312 Neb. 518, 980 N.W.2d 27 (2022). We turn to Miller's assignment of error relating to the sufficiency of the evidence.

Section 42-924 provides in part that any victim of domestic abuse may file a petition and affidavit for a protection order, and the petition shall state the events and dates or approximate dates of acts constituting the alleged domestic abuse, including the most recent and most severe incident or incidents. Section 42-924(3)(b) further provides that a victim of domestic abuse may file a petition and affidavit to renew a protection order, which shall be filed any time within 45 days before the expiration of the previous order. The protection order may be renewed on the basis of the petitioner's affidavit stating that there has been no material change in relevant circumstances since the entry of the order and stating the reason for the requested renewal, if (a) the petitioner seeks no modification of the order, and (b) the respondent has been properly served and fails to appear at the hearing, or indicates that he or she does not contest the renewal. § 42-924(3)(b).

In *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022), the Nebraska Supreme Court recognized that § 42-924(3)(b) can be read to suggest that renewal is not automatic when the respondent contests the renewal. Rather, when an evidentiary hearing is held, the *Garrison* Court explained that the purpose of that hearing is to receive evidence so that the court may reweigh the burdens the order will inflict against its benefits in light of all the relevant circumstances, including what has or has not changed since its issuance. A protection order, upon renewal, just as at its inception, is oriented toward the future with the goal to protect victims of domestic abuse from further harm. *Garrison v. Otto, supra*.

In *Garrison*, the court observed that the renewal of a protection order shares the same fundamental characteristics of the original protection order. *Id*. The renewed protection order must, therefore, be supported by the same statutory and equitable considerations as an original order. *Id*. Those considerations include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships. *Id*. But the statutory scheme does not suggest that a new act is a prerequisite for renewal of an existing domestic abuse protection order. *Id*. Rather, there must be no material change in relevant circumstances in order for the protection order to be extended. *Id*. Because a protection order upon renewal, just as at its inception, is oriented toward the future with the goal to protect victims of domestic abuse from future harm, the court at a hearing on a petition for renewal must reevaluate the likelihood of harm over the course of another year in which it would be in effect if the petition for renewal is granted. *Id*.

Here, Young filed a petition and affidavit to renew the domestic abuse protection order against Miller and alleged that there had been an event that had occurred since the last issuance. Young alleged in the affidavit, and confirmed at the hearing, that Miller had contacted her from jail and then had his cousin contact her to tell her that it was an accident. At the hearing, Young testified that the message disturbed her due to the history between the two which consisted of emotional, financial, and physical abuse. Young acknowledged that Miller was incarcerated, which limited much of what he could do. But she testified that she worried that if the protection order lapsed it would be opening a door that led to her future harm or even death.

Young described the distress the communication caused her. While Miller testified the call was accidental, and that his cousin contacted Young of his own accord, Young opined that an accidental call was not likely. Her affidavit stated that she was specifically told by Miller's cousin that Miller had asked him to contact her.

Because the prior applications and orders for the previous protection orders are not in our record, we are unable to discern the basis upon which they were entered and can only surmise the basis from Young's testimony that she had previously been subjected to emotional, financial, and physical abuse by Miller. Based upon the testimony, we can infer that Miller's telephone call to Young and his request that his cousin relay a message to her constituted violations of the most recent protection order. And given the court's order, it is apparent that the district court rejected Miller's testimony regarding those events. Young testified as to the effect of those events on her and that she remained fearful of Miller despite his incarceration. We cannot say, based on the facts before us, that the district court erred in determining that the likelihood of future harm justified a 1-year renewal of the domestic abuse protection order.

CONCLUSION

Following our de novo review, we affirm the renewal of the domestic abuse protection order for 1 year.

AFFIRMED.